Please come forward. May it please the court, Brian Wolfman for Ludmyla Pyankovska. I'd like to reserve two minutes for rebuttal. Congress and the Nevada legislature knew that to make meaningful their laws on interception of private communications, they needed to disband disclosure and use of those interception and the laws protection of privacy would be rendered nearly toothless otherwise because people would be able to disseminate the information including in court proceedings and inflict on a large scale the privacy that the acts were meant to protect. Yet Jones argues that these bans don't apply to him saying nor Pennington shields him from liability. Before explaining why that's wrong, it's worth observing the audacity really of this argument. Until it was accepted by the district court, no court of which we are aware has ever suggested, let alone held, that nor Pennington can immunize a wiretap act violation and for good reason. Nor Pennington is a rule of statutory construction, a rule of constitutional avoidance, so when confronted with broad and highly ambiguous statutory prohibitions like those barring restraints of trade or racketeering activity, a court treads lightly because it's not certain whether Congress wanted to prescribe the activity in question or not. Your time's limited so I want to just ask you some questions here. So if you could just give me your quick assessment of how the wiretap acts consistent with the First Amendment's Petition Clause. That's where I'm getting to. And the reason it's consistent with the Petition Clause is that the nor Pennington doctrine, which goes to the Petition Clause, deals with situations where the language of the act is ambiguous and broad. Here, the very conduct at issue was prescribed by Congress. So the question is not Petition Act was applied constitutionally under the First Amendment, and it plainly was. Congress has plenary authority to prescribe petitioning activity. The courts prescribe petitioning activity when they have hearsay rules and they Let me ask you, this is a hypothetical, let's suppose that the interceptions in this case disclosed pedophilia. Over at the other parent's house, there were children being abused. Or suppose the intercepts showed someone making explosive devices. Is it your position that these just could not be used in court at all, for example, to get an arrest warrant, a search warrant? Oh, it absolutely could. So the act has exceptions for getting search warrants. Absolutely. The act in 2511 has exceptions, of course, for search warrants. One way to think about the wiretap back is a further reticulation and codification of the act does not permit is what occurred here, which is a retrospective cost benefit analysis in a custody dispute in which going in, there was no public controversy. There was no matter of public concern. There was a wholly private conversation between a mother and her child. And the Wiretap Act is exactly what the Wiretap Act was meant to prescribe. The legislative record indicates that there were two things that the Congress was concerned about when it prohibited disclosures and uses of this kind. It was commercial espionage and the use of these kinds of materials in marital litigation. And we point that out in our briefs. That's exactly what was prescribed here. And that's why the petition clause, that's why the Constitutional Avoidance Doctrine of Nora Pennington just is out of place here. And it's why you can look up and down the state and federal courts and you don't find a single decision until the decision in this district court invoking Nora Pennington with respect to the Wiretap Act. And just to follow up on the question I asked you, it's your reading of the Title III that information obtained from illegal wiretaps can support search warrant applications? If it's an unlawful one, I don't know the answer to that. Still illegal. Yeah. I do not know the answer to that, but we know in our system how this is done. This is a prophylactic act. It's meant to prevent the very kind of conduct that happened here. But we know what good government does when it suspects a crime and has probable cause. It goes to get the warrant in the first place. Here what Mr. Jones is doing is engaging in a retrospective cost-benefit analysis, which we think is the cost-benefit analysis itself is wrong. But the point here is Mr. Jones could have done the equivalent of what a government does when it seeks a warrant. He could have gone to the state court and said, well, Your Honor, I have been told that these materials exist. What should I do about it? This is what we do in courtrooms every day, when a lawyer is confronted with a situation where they might have evidence that is not inadmissible. We do this in discovery every day. We go forward and we say, give me the privilege log. Explain to the court what it is that you want to put on this court record. And that is exactly what was not done here. Instead, this was brazenly put on a court record for all the world to see. This is the exact conduct Congress had in mind when it put in the disclosure and use prohibitions in Title III, Your Honor. It looks like in the briefing neither of the parties divided the North Pennington Doctrine into the three steps that it appears to have. So I guess let me just ask you, under Step 1, how would you define petitioning activity and would the mother's lawsuit here prevent Jones from petitioning to the court? Yes, Your Honor. I want to answer your question and I'll do that. But I want to be clear, we didn't go in depth into the three-step analysis because we don't think North Pennington applies to this situation at all. But to answer your question, I want to be candid about it. Yes, the conduct at issue here is petitioning activity. Putting something on a court record is petitioning activity. The reason North Pennington doesn't apply here is the law expressly prohibits this activity. And so the question then is whether the activity that is prohibited was constitutionally prohibited, and it was. This is everyday type of activity where, excuse me, everyday legislative activity in which petitioning conduct is proscribed. Again, I want to go back to the commonplace example. There are longstanding common law prohibition on petitioning activity. And so the question here is whether the Constitution proscribes the activity in question. Because I know I'm running into my rebuttal time, unless the Court has any further questions, I will reserve the balance of my time. Good morning. Todd Kennedy, Kennedy and Cuvier, on behalf of the Appellant John Jones. And may it please the Court. To start out, I want to make sure that we're very clear. Mr. Jones didn't participate in any collection work. He received these after the fact, learned of it after the fact. It's very clear in the record. The State Court made those findings. And as the Court mentioned, let's cut to the chase. We do have some guidance about how the First Amendment applies to Congress' act in the Warren Act. And I would disagree with opposing counsel. The First Amendment is a limit on Congress' authority, not the other way around. And in terms of what we have with Supreme Court comment, we have the Bartnicki case. And I think that's the core issue that we should be looking at in terms of how to address this case. Because in that case, you have very similar facts. You have someone receiving, did not participate, receiving unlawfully obtained information and disclosing it to the media, and then the media disclosing it and publishing it, and everyone gets sued. But you have a couple of assumptions the Court made. The Court made an assumption. The Supreme Court assumed for purposes of its analysis that they were illegally obtained recordings. And then it assumed that the people that were being sued reasonably should have known. So what you have is directly on point here, in contrary to Appellant's argument, is the Court assumed from the get-go that the activity that was being complained of was direct violation of express prohibitions in the Act. And it didn't matter, because the First Amendment said you cannot extend liability to these people because of their First Amendment rights. Now, obviously, in that case, we were talking about the right of the media, the right to publish matters of public concern. But the Court still went into a balancing of the interests involved. The first – and looking at the intent of the Act and what purposes. The Court had no trouble saying, look, we do not see trying to deter a collection being an important enough interest to infringe upon First Amendment rights of people that didn't do the collection. They did think that it was a significant right that needed to be analyzed, which was the privacy rights of the people whose conversations had been recorded. But what they did is they balanced that against the public's right to receive truthful information and the media's right to publish it on a matter of public concern. Now, we use public concern in broadcasting cases and publication cases because that is the preeminent right. The public has a right to know things upon which the public has – is a matter of public concern. When we get to petitioning, it's no different in terms of the right involved. It's still the First Amendment. The First Amendment – and this Court has said in its decisions, the right to petition is just as important as the right to speech, the right to publish. It, in fact – But if – to the extent that a – let's assume arguendo that a litigation is a petitioning activity, as your opponent points out, there are all kinds of statutory limitations on that. The federal rules of evidence, the statutes of limitation, and so forth. There are limits on what you can do. Here you've got a statute that says no part of the contents of any illegally accepted communication and no evidence derived therefrom may be received in evidence in any trial hearing or other proceeding. In order to win your argument, don't you have to convince us that this statute is unconstitutional? Well, I would state a couple of things to that. First of all, the rules of evidence, rules in terms of admissibility, there were some cases cited in the briefing on discovery of uses. All of those, however – Well, let me – you've got limited time, but in the face of this pellucid and rather broad language that Congress enacted, I don't understand how Mr. Jones believed that what he was doing was legal. Okay, well – Why he could believe it was legal. There's two aspects to that, Your Honor. First of all, the Act itself says that it's not unlawful, an unlawful recording, if one party consented. He did the research. He determined that the vicarious consent doctrine made an argument, gave him an argument, that he could bring to court that vicarious consent made them not unlawful and therefore admissible. Now, he lost on that argument in state court. But as lawyers, it's our job to argue as to the extensions of the law and to argue. And it's very important that we do that in a protection if one's right, but not if one's wrong. And he also had a secondary argument, Your Honor, which actually prevailed, which was notwithstanding its legality or illegality, and that would determine admissibility, it was appropriate for the court to take that and authorize the court-appointed expert to receive that. And that really gets into the balancing of the important interests here. This was not a civil action where you have a plaintiff and a defendant and their rights are being adjudicated. This was a custody issue. And Nevada law, Nevada statutes, Nevada cases, and I think in every jurisdiction, the interests are not those of the disputing parents. They are there to argue their views of the actual controlling interests. That is the minor child, because the only consideration in a custody dispute is what is best in the best interest of this minor child. And that's where you get the Nevada Supreme Court made it very clear, well, they thought that would be admissible anyway under Nevada rules. I understand Nevada rules do not undermine Federal statutes. Why didn't Mr. Jones, I understand you're claiming that he had a good faith basis to believe that an exception applied here. Given the uncertainty, why didn't he submit the materials under seal? And putting it another way, you know, I'm kind of looking into the first step of the Norah Pennington test of, you know, whether this lawsuit actually burdens his petitioning rights. I mean, he could easily just say, I'm not certain if, you know, this was legal or not. I'll put this under seal and let the court look at it without broadcasting it to the public, given that this is a private conversation. Well, court proceedings are, by definition, you know, by default open to the public. Oh, but people file things under seal all the time. And in fact, anything judges always complain, the parties overseal things. So here, it seems like a classic case where you would file under seal and not publicize it. I would argue, Your Honor, that the seal, not seal in the filing, that's not the issue, one, not the issue before the court, but it wouldn't have changed what we're doing here today because the issue is, was this activity protected? I don't believe the manner of the speech. Well, I guess it goes to the question of whether it burdens his rights, this lawsuit burdens his rights. I don't believe the manner of the speech. You could liken this to almost a content rule, whether he filed it under seal or not. It's either protected or it's not. And if we're talking about best practices, well, then it's problematic in the statute, because the statute says you can't do it at all. Well, if we conclude, if this panel concludes, that the First Amendment says, yes, you can, well, then you have this ambiguity, because the statute doesn't – it only says admissibility. It doesn't – it says it cannot be admitted into evidence. It does not say you can't submit it, make your arguments, and or present it to an expert, because the interests of the child predominate over the privacy interests. And I – so in that context, I think that what we're saying – if we're talking back saying, well, he should have done it this way, I just don't believe that when you have a statute that has criminal penalties and civil penalties, if it's not clear to tell you how to comply, I don't think you can impose liability constitutionally. When did your client know that this information was going up on Facebook? I do not know the answer to that. I don't think he had anything to do with that. He was litigating a case and certainly wouldn't participate in any of that. When did he know the information was going up on Facebook? I don't know, Your Honor. So are you – do you think Norah Pennington applies? I believe Norah Pennington is a label for First Amendment protection. I do believe Norah Pennington applies. I think that you don't need immunity under – the First Amendment doesn't depend on whether a statute can be construed to not apply to you. I understand that's – some panels have made that as part of the analysis, but I believe that when you look at Bartnicki, they weren't construing the WARN Act. You keep citing Bartnicki, and I know you relied on that in your briefing, but it seems like that case dealt with threats made during highly public union negotiations, which I think the Supreme Court called a matter of public importance, and I'm just trying to figure out how this private family dispute is equivalent to that. Well, the Nevada Supreme Court and the trial court concluded there was an ongoing emotional harm being done to a child. Now, we can – some people would call that abuse. Some people would call that just bad form. I would say that the Nevada's interest and the public's interest in protecting children from that sort of emotional harm certainly is a matter of – if we're going to use the matter of public concern, but it is the preeminent and really only consideration in these petitioning proceedings to where Mr. Jones and the court are protecting the rights of the child to have this relevant, probative information used to determine the best interest and protect that child from harm. I certainly have a hard time saying it's not an important matter of concern. Was publishing this information on Facebook a reasonable vehicle for protecting the best interests of the child? Well, I was – Mr. Jones, all of his activity was exclusively limited to court. Sorry? All of his activity was limited to court. He didn't publish anything on Facebook. He filed things in court. He filed things, and then immediately thereafter, his client puts this stuff up on Facebook, right? And I think that – And he put it up on Facebook while a motion to seal was pending. Your Honor – Is that right? No, Your Honor. The appellant here did not seek to seal anything for two years. She could have at any time. She had as much – and she was represented by counsel in the state court. She could have sought to seal it herself if she felt that it wasn't there. But again, Mr. Jones' conduct was petitioning activity that others may have published it and done other things with it. But do you need the exhibits to petition? I mean, you can bring a lawsuit, but I'm sure they are needed for petitioning. They're not – you don't need them to petition. Well, let's go back to – there was an argument about when – and some discussion about when a privilege is being reviewed. The documents are often submitted to the court and reviewed by the court to decide that. Again, whether or not – looking at – submitting it and asking the court, look at this information, decide should it be used by the expert. We think it's admissible, but even not. I don't know how you get to that point without at least the court being aware of what the nature of it is. But unfortunately, we hold the lawyers accountable to understand what the law is. And if he had any question at all, I mean, it should have probably been aware of the Wiretap Act and to file those kind of exhibits with his petition. And I think it's the filing with the petition – those exhibits are not the – do not appear to be the petitioning activity. But give me your best argument why it is. Give me your best – this is your chance. Well, I certainly will, Your Honor. I believe that it was necessary when you were opposing – remember, this – the activity of Mr. Jones was in opposition to a motion filed by the appellant. And that was also to change timeshare. And it was in response. And he – I think, you know, obviously I'm not in his head, but I believe he felt he needed to present his best case and present his arguments. Here is the evidence, and this is why I think it's admissible. Rarely do courts rule on admissibility without looking at the evidence first. But I would say this – and I'm sorry, I'm going well over my time. But I have a concern about looking back and saying, well, it's protected if you did it the right way, is to me – and this is – again, you asked for my best argument. It seems awfully akin to saying, well, we don't like the way you did it. And that seems awfully akin to, well, we don't like the content of your speech. And that's my concern, is when we start saying, well, how you petition determines whether or not you're protected. I mean, the court has – certainly has the ability to sanction misconduct by lawyers, but we have to be very careful about chilling the lawyer's ability to come in and ask the court to, one, expand the law, extend the law, and – or consider other ways, other than admissibility, to consider this information, particularly when we're talking about the well-being of a child. Thank you. Thank you. Your time is well over. I think you have a colleague who's going to be arguing on behalf of Mr. Abid. Is that correct? Yes, Justice. That would be me. Okay. Do you want to go ahead and present your argument? Yes. Thank you, Justice, for allowing me to be here. And may it please the court, I don't want to waste any more time, so the first question I have is, does the court have any questions for me that I might need to answer? Yeah. Why wasn't your client liable for $100 a day, as opposed to $10,000? Well, the argument that was made in Mr. Abid's brief was that the court had discretion under the Act to either award damages or not, or to award whatever damages it thought was appropriate. With respect to the state court damages, it did address the state court damages and skirted right through it. And I can quote the passage from the court that where it says, plaintiff is prosecuting a case predicated entirely on defendant's illegal act, placing a recording device in his minor son's backpack with the intent to surreptitiously record plaintiff. Although some of plaintiff's damages stem from the state court's decision, the plaintiff does not challenge that decision or the corresponding judge as erroneous. Accordingly, the court finds that it has jurisdiction to award damages incurred as a result of the underlying state action. Although the court has jurisdiction to award such damages, it does not necessarily follow that it ought to. The court now considers whether plaintiff is entitled to recover damages under the Wiretap Act. So, the court did consider whether it could or should award damages based on the state court claims, and it did not. And I think part of the reason was that the damages that the appellant had indicated she suffered was not competent evidence. So, the order was specifically that she provide competent evidence to show that she suffered damages as a result of the Wiretap Act itself. Much of what she submitted was not the type of what we would call competent evidence. It wasn't admissible at trial or either relevant. For example, she submitted her attorney's bills. Well, she lost that case, so she wasn't entitled to an award of attorney's fees in the first place. And the document she submitted itself didn't even have signature from the attorney. As far as the Wiretap Act, it says specifically, I think, the case law states that the court may award damages or it may not. The first time that we're hearing that these transfers were 700 days was in her recent brief. She didn't make that argument at the district court. So, the district court didn't have the ability to even consider that she never made it. She never said they were up 700 days. Do you have any concluding statement? No, I think it's pretty straightforward. It's, you know, whether the court had discretion or not, we would submit that it did and it made its decision based on that discretion. Thank you. Thank you. I know my time is limited. I want to touch on both, but very briefly. Yeah, I'll let Mr. Kennedy go a little bit over his time. I'll let you go a little bit, just because we had a lot of questions. I appreciate that, Your Honor. Just on the last point, very quickly, our briefs basically respond to everything on damages. But just on one of the points that Mr. Hibato made, the court awarded my client a default judgment, not only on her Federal claims, but on her Nevada law claims, and yet effectively dismissed the Nevada law claims by not explaining why it failed to award damages. The error is particularly pronounced because Ms. Pienkowska expressly asked for compensatory and punitive damages on those claims. And in response to the court's request for an accounting, submitted declarations from various individuals, including her physical harm she suffered on account of Abeed's invasions of her privacy and inflictions of emotional distress on her. That's at ER 13-50. This is not only competent evidence, highly competent evidence. If this were given in court from the stand without any response from Abeed, I don't have any doubt that damages would have been awarded. Does the statute, in your view, give the court discretion as to award the $10,000 or the per diem? It does not. We say this in our reply brief, and here is why. The court has discretion whether to award statutory damages. But once it decides to award statutory damages, it has no discretion but to follow the statute. And the statute says you award a minimum of $10,000 unless actual damages or $100 a day would exceed $10,000. And for the reasons we give in our brief, we ask the court to remand on that question. Let me, if I might, just turn to you. Let me just ask you. I just want to ask the question this way and see what your answer is. So does the mother's lawsuit here seek to hold Mr. Jones liable for filing and arguing the custody motion, or does it only target Jones for disclosing the exhibits of the edited transcripts? Just to be clear, for Jones, it's merely the disclosure. Now, we think that's a very serious violation of Federal law, but it is the disclosure. What I was talking about just now was with respect to Abeed. Now, if I could turn, I just want to say just a couple things. And this picks up where Judge Lee was asking. Nevada law, NRS 120.110, allows almost all papers to be filed under seal in divorce cases. Yet, it's clear that what Jones and Abeed were doing was trying to humiliate my client. This did not have to become public. And Jones was not, quote, just doing his job. He could have equally protected the child by proffering the evidence. And as I said in my opening, lawyers proffer evidence all the time on admissibility. That's how Freedom of Information Act exemptions are litigated. We as lawyers know, we put in privilege logs. We just don't display information in courts without permission when we have any doubt about the legality of its use. Unless the no, thank you. Thank you. So thank you all for your oral argument presentations here today. The case of Pionskova versus Sean Abeed and John Jones is now submitted.
judges: MURGUIA, Parker, LEE